IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEVEN O. HICKMAN,                    :
                                      :
            Plaintiff,                :
                                      :
    v.                                :      Civ. No. 14-1185-RGA
                                      :
CPL. CASTRO,                          :
                                      :
            Defendant.                :

---

Steven O. Hickman, Georgetown, Delaware. *Pro Se* Plaintiff.

Megan Trocki Mantzavinos, Esquire, and Emily Kara Silverstein, Esquire, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Wilmington, Delaware.  Counsel for Defendant.

## MEMORANDUM OPINION

May ⫫ , 2016
Wilmington, Delaware

*Richard G. Andrews*

**ANDREWS, U.S. District Judge:**

Plaintiff Steven O. Hickman filed this action pursuant to 42 U.S.C. § 1983. (D.I. 2). Plaintiff was held at the Sussex Correctional Institution in Georgetown, Delaware, when he commenced this lawsuit. He has since been released. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. Defendant Cpl. Castro, a police office with the Milton Police Department, moves for summary judgment; Plaintiff filed a cross-motion for summary judgment; and Defendant moves to strike Plaintiff's motion. (D.I. 26, 29, 32). Briefing is complete.

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, who is African American, alleges that Defendant violated his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution and the Delaware Constitution when, on May 18, 2013, she "generated" the issuance of a warrant, arrested him on a drug charge, and incarcerated him. (D.I. 2). Plaintiff alleges there was no probable cause for his arrest, "other than [his] race." (*Id.*). He also alleges false report, false arrest, illegal search and seizure, false testimony, false evidence, unlawful incarceration, and slander. (*Id.* at 12).

Plaintiff alleges that he told Defendant the drugs were not his, a State Trooper told Defendant that he saw a white person throw a bag containing cocaine behind him and later, the white person admitted his conduct to Defendant. (*Id.* at 6). The Complaint states that on June 8, 2013, the Superior Court dropped the charge of possession of cocaine. (*Id.*). Plaintiff filed a citizen's complaint with the Milton Police Department on July 11, 2013. (*Id.* at 8.). Plaintiff seeks compensatory damages.

The record reflects that on May 18, 2013, Defendant was advised of two suspicious males in the Food Lion parking who were jiggling car handles. (D.I. 27 Ex.

1). According to the affidavit for the arrest warrant, Defendant was provided a description of one black male suspect wearing black shorts and a white shirt, and one white male suspect wearing a white shirt and jean shorts. (*Id.*). Defendant arrived and found two individuals who fit the suspects' descriptions sitting on a bench. (*Id.*) Plaintiff was one of the individuals, and the other was Michael Workman. Defendant made contact with the men in front of the Milton Liquor Store in the Food Lion parking lot. (*Id.*) State Trooper Martinez arrived at the scene from a different direction and saw Plaintiff and Workman leaning over a cart rack, looking behind it. (*Id.*) Defendant looked behind the cart rack and found a small ripped plastic bag which contained white powdery substance believed to be cocaine within reaching distance of the bench where Plaintiff and Workman had been sitting. (*Id.*) The affidavit states that the powder tested positive for cocaine, that Workman advised Defendant that he had no idea what was going on, and that Plaintiff stated that the cocaine belonged to Workman. (*Id.*)

The men were taken to the Milton Police Station for questioning. (*Id.* at Ex. 2 at 18). During his deposition, Plaintiff testified that, at some point, Workman admitted that the bag of cocaine was his, but he also testified that this information came from papers provided to him by his lawyers and, after that, he testified that he could not recall how he found out.[1] (*Id.* at Ex. 2 at 26, 27).

Milton Police Department surveillance tapes recorded Plaintiff in the holding cell telling Defendant that the substance found was not cocaine, but was crushed nicotine

---

[1] For the most part, Plaintiff did not provide answers to questions posed to him. He answered that he did not know, he was not sure, he did not recall, he was not sure of the details, or he had information responsive to the questions in notes, but had not brought the notes to his deposition. (*See* D.I. 27 Ex. 2).

pills he found in the trash. (D.I. 31 Ex. 3 at 2:27:00 - 2:29:11). A surveillance tape from inside the police station recorded Defendant explaining to Plaintiff that she had asked him what was going on, and she had asked Workman what was going on. (*Id*. at Ex. 4 at 04:00-07:00) Neither wanted to say "it was his," and Workman "didn't want to say what was going on", so "this is it." (*Id*.).

A surveillance tape of Workman reveals that when Defendant spoke to him, Workman stated that he did not know why he was in the police station. (*Id*. at Ex. 5 at 11:00-17:00). Defendant explained to Workman that another trooper had seen Plaintiff and Workman dumping what Defendant was holding (*i.e.*, the powdery substance) behind the grocery cart. (*Id*.). Workman stated that he "didn't throw anything." (*Id*.). Defendant explained that "you both can say you didn't do it, but you are both going to be charged with it." (*Id*.). Workman asked, "what is it?" (*Id*.). Defendant stated to Workman that, "Hickman says that this stuff I have here is yours," and Workman responded, "I don't know anything about it." (*Id*.). Despite Defendant telling Workman that Plaintiff was upset with him for his failure to take responsibility for the powdery substance, Workman reiterated several times that he was being cooperative, and he "didn't know what was going on." (*Id*.).

On May 22, 2013, Plaintiff's criminal lawyer authored a memo for Plaintiff's preliminary hearing memorializing interviews conducted for Plaintiff's criminal case. (D.I. 27 at Ex. 4). The attorney's goal was to get the charge against Plaintiff dropped at the preliminary hearing. (*Id*.) The memo states that: (1) "Cops approached them and the State Trooper told the Milton officers that he saw the white person (Workman) take the small bag out of his sock and throw the bag containing cocaine behind [Hickman],"

3

(2) "Later at the Milton PD, Workman admitted to the police that he threw the bag like the State Tpr observed"; (3) "Workman admitted that the bag and cocaine was his"; and (4) when this information was provided to Defendant, she told Plaintiff that "it was too late and that she was not going to do the paperwork over again; both of them would remain charged." (*Id.*). The memo states that "Workman wants to get [a] plea and says he will set the record straight by taking responsibility." (*Id.*).

Plaintiff was charged with possession of a controlled substance. (*Id.* at Ex. 3). During the May 24, 2013 preliminary hearing, the charge against Plaintiff was reduced to a misdemeanor for possession of drug paraphernalia, Plaintiff pled not guilty, and his bail was changed to $3000 unsecured. (D.I. 27 Ex. 6). A nolle prosequi as to the misdemeanor was entered on June 25, 2013. (*Id.*). On July 11, 2013, Plaintiff filed a citizen complaint that Defendant unlawfully arrested him for possession of cocaine and jiggling a car door handle. (*Id.* at Ex. 7). Internal Affairs investigated, reviewed the surveillance video, policies and procedures, and local and state law and concluded that Defendant should be exonerated "due to no violations." (*Id.* at Ex. 8).

Defendant moves for summary judgment on the grounds that there is no evidence to support Plaintiff's claims, the slander claim fails as a matter of law as there is no evidence of injury or economic harm and, in the alternative, Plaintiff is immune from suit under the doctrine of qualified immunity. (D.I. 27). Plaintiff filed a cross-motion for summary judgment on the grounds that he was arrested without probable cause. (D.I. 29).[2]

---

[2]The Court will deny Defendant's motion to strike Plaintiff's motion for summary judgment (D.I. 32) and will consider Plaintiff's motion for summary judgment as it is very

4

## STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.[3] *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986);

---

similar to his opposition to Defendant's motion for summary judgment.

[3]Plaintiff failed to support his motion because he did not to cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" as is required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B). "[T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001) (The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" to support its memorandum opinion and order.).

5

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

Plaintiff's opposition to Defendant's motion for summary judgment and his cross-motion for summary judgment consist solely of argument and are not accompanied by sworn affidavits or signed under penalty of perjury. Hence, they cannot be relied upon to defeat Defendant's motion for summary judgment. *See Byrne v. Monmouth Cnty. Dep't of Health Care Facilities*, 372 F. App'x 232, 233-34 (3d Cir. 2010) (unsworn certification not supported by any documentation or factual testimony is insufficient to defeat summary judgment); *Williams v. Borough of West Chester*, 891 F.2d at 460 (nonmoving party cannot simply assert factually unsupported allegations to meet

6

burden at summary judgment); 28 U.S.C. § 1746 (unsworn declarations may substitute
for sworn affidavits where they are made under penalty of perjury and otherwise comply
with the requirements of 28 U.S.C. § 1746). Finally, statements which conflict with an
individual's deposition testimony do not raise a genuine issue of material fact and can
properly be disregarded where the conflict is unexplained or unsupported by other
record evidence. *See Jiminez v. All Am. Rathskeller*, 503 F.3d 247, 253–54 (3d Cir.
2007) (deposition testimony is more reliable because subject to cross examination).

## DISCUSSION

**No Evidence.** Defendant moves for summary judgment on the grounds that
Plaintiff has no evidence to support his claims for relief. Plaintiff responds that his
Complaint "speaks for itself as indicated." (D.I. 30 at ¶ 1). He also states that he did
not have the Complaint with him at his deposition and "could not recall due to the fact
he was not 100% sure and did not want to say something that was not true. Therefore
not wanting to say something that was not true [he] stated the Complaint speaks for
itself." (*Id. at* ¶ 2).

Plaintiff offered no evidence to support his claims. "At summary judgment, a
plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and
provide some evidence that would show that there exists a genuine issue for trial."
*Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Because Plaintiff has
not come forward with any evidence to support his claims, the Court will grant
Defendant's motion for summary judgment.[4]

---

[4]Plaintiff proceeds *pro se*. Therefore, the Court will address his claims and
review the evidence presented by Defendant.

7

**False Arrest/False Imprisonment.**   Plaintiff seeks summary judgment on the Fourth Amendment claims brought pursuant to 42 U.S.C. § 1983 for false arrest/false imprisonment on the grounds that Defendant knew the drugs found belonged to Workman.  Plaintiff contends that Workman admitted the drugs were his and that Defendant did not investigate the matter.  Defendant argues that the evidence establishes sufficient probable cause to support Plaintiff's arrest.

To succeed on false arrest and false imprisonment, a plaintiff must establish that probable cause was lacking for his arrest and related detention.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  Probable cause "does not depend on whether the suspect actually committed any crime."  *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).  Under § 1983, liability for false arrest upon a warrant may be found when it is shown "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."  *Toribio v. Spece*, 558 F. App'x 227, 229 (3d Cir. 2014) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)).

Based upon the evidence of record, probable cause existed for Plaintiff's arrest. Both he and Workman were in the vicinity where the drugs were found, they both had

8

been acting suspiciously, Plaintiff told Defendant the bag contained crushed nicotine pills (thus revealing his knowledge of the bag), and both Plaintiff and Workman denied ownership of the drugs found near them. The evidence does not support Plaintiff's position that Workman admitted the drugs were his prior to Plaintiff's arrest. To the contrary, the surveillance tapes recorded Workman's denial of possession of the drugs on May 18, 2013. Because they both denied ownership of drugs and gave conflicting statements, neither exonerated the other. Considering all of the circumstances of record, Defendant had probable cause to detain and arrest both men for "possession" of the drugs.[5] It was not until some time later that Workman conceded the drugs were his because he wanted "to get a plea to set the record straight."

Finally, there is no evidence that Defendant made any material false statements or omissions in her affidavit in support of the warrant to arrest Plaintiff. The Court finds that Defendant's actions were based on probable cause, and were reasonable under the circumstances and, therefore, will grant the motion for summary judgment.

**Malicious Prosecution.** Although it does not appear that Plaintiff raises a § 1983 malicious prosecution claim, Defendant moves for summary judgment to the extent that is Plaintiff's intent. "To prevail on a malicious prosecution claim under [§] 1983, a plaintiff must show that: (1) [defendant] initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor;[6] (3) the proceeding was initiated without

---

[5] "Ownership" is certainly relevant to possession, but "possession" is a broader concept than ownership. One can possess drugs without being the owner of the drugs.

[6] A nolle prosequi disposition is a favorable termination unless the accused entered into a compromise or surrendered something of value to obtain that outcome. *See Malcomb v. McKean*, 535 F. App'x 184, 187 (3d Cir. 2013).

probable cause; (4) [defendant] acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

Given that all its elements have not been met, Plaintiff cannot prevail on a malicious prosecution claim. Without a doubt, Defendant initiated the proceeding, the matter ended in Plaintiff's favor, and he suffered a deprivation of liberty. However, as discussed above, probable cause existed to initiate the matter. Moreover, there is no evidence that Defendant acted maliciously or for a purpose other than to bring Plaintiff to justice. The surveillance tapes recorded Defendant's explanation to Plaintiff that, because neither he nor Workman admitted to possession of the drugs, she had no choice but to charge both of them. Under the circumstances, no reasonable jury could find Defendant acted maliciously in charging both men. Accordingly, the Court will grant Defendant's motion for summary judgment as to the malicious prosecution claim.

**Sixth and Fourteenth Amendment.** The Complaint alleges in a conclusory manner that Plaintiff's rights under the Sixth and Fourteenth Amendments of the United States Constitution were violated. Defendant moves for summary judgment on the grounds that neither the allegations in the Complaint, nor Plaintiff's deposition testimony, support claims for relief under these amendments.

The Complaint does not indicate which clause of the Sixth Amendment was allegedly violated: speedy trial, confrontation, right to counsel, impartial jury, etc. *See* U.S. Const. amend. VI. The evidence of record reflects that Plaintiff was provided

10

counsel, he knew his accuser, and the matter was set for trial. There is nary a hint that Plaintiff's Sixth Amendment rights were violated.

Plaintiff alleges that Defendant violated his right to equal protection under the Fourteenth Amendment, presumably based upon his race. The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). "If state action does not burden a fundamental Constitutional right or target a suspect class, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. If the challenged state action involves a suspect classification based on race, alienage or national origin, or infringes on a fundamental constitutional right, we must apply the strict scrutiny standard." *Id.* (quoting *Doe v. Pennsylvania Bd. of Prob. and Parole*, 513 F.3d 95, 107 (3d Cir. 2008) (internal quotation marks & citations omitted)).

No reasonable jury could find for Plaintiff on the equal protection claim. As Defendant points out, all evidence points to similar treatment - both Plaintiff (who is African American) and Workman (who is Caucasian) were arrested and charged with the same crime. There is no genuine issue of material fact and, therefore, the claim fails as a matter of law. Accordingly, the Court will grant Defendant's motion for summary judgment as to the Sixth and Fourteenth Amendment claims.

11

**State Tort Claims.**  Defendant moves for summary judgment on Plaintiff's Delaware tort claims of false arrest, malicious prosecution, defamation, and wrongful imprisonment (to the extent he intended to raise them) on the grounds that she is insulated from tort liability under the Delaware County and Municipal Tort Claims Act, 10 Del. C. § 4010 *et seq*. ("CMTCA").  In addition, Defendant argues that Plaintiff has not shown any bodily injury or economic harm as is required for recovery under the CMTCA.

The Court agrees that Defendant is insulated from liability and, therefore, is entitled to judgment as a matter of law with respect to the Delaware tort claims asserted in the Complaint.  Section 4011(a) of the CMTCA provides in pertinent part: "[e]xcept as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages . . . ."  10 Del. C. § 4011(a).  Defendant, a Milton police officer, is an "employee" as defined by the CMTCA.  *See* 10 Del. C. § 4010(1) (defining employee as "a person acting on behalf of a governmental entity in any official capacity . . . .").

A governmental employee is immune from suit under the CMTCA "[e]xcept as otherwise expressly provided" by some other statute.  *See id*. at § 4011(a).  The CMTCA sets forth several exceptions to immunity, none of which are relevant under the facts alleged in the Complaint.  *Id*. at § 4011(b), (c).  There is a limited exception to the immunity provided by section 4011(a): "[a]n employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were

12

not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent." *Id*. at § 4011(c).

Plaintiff does not allege that he suffered bodily injury as a result of his arrest and imprisonment, but he does allege he suffered property damage due to diminished book sales as a result of his arrest and detainment. Plaintiff testified that he had not filed tax returns in the past five years and, thus, failed to show a history of income or lost income. (D.I. 27 Ex. 2 at 44). Plaintiff testified that he authored and had published a religious book, but was unable to sell it because he was titled a rapist. (D.I. 27 Ex. 2 at 45, 47). The instant case, however, does not involve allegations of an arrest based upon an alleged rape. There is no evidence that Plaintiff actually suffered any lost profits, particularly as a result of the arrest in this "possession of drugs" case . (D.I. 27 Ex. 2 at 44-47). Plaintiff explained that prior to his arrest on May 18, 2013, he had appeared on an internet TV talk show on January 15, 2014 to market his book, but he did not make any money as a result of the publication of his book.[7] (D.I. 27 Ex. 2 at 44-47). In addition, Plaintiff testified that he did not recall anything that would support his allegations except for his attempted sales of his religious books. (D.I. 27 Ex. 2 at 44-47).

In addition, there is no evidence of record that Defendant acted outside the "scope of employment" or that any of her particular acts "were performed with wanton negligence or willful and malicious conduct." The record merely reflects that Defendant,

---

[7]There is no evidence of monies expended by Plaintiff in publishing his book. When asked if he had to pay anything out-of-pocket to get the book published, Plaintiff replied, "took me three years. I've been paying for three years." (D.I. 27 Ex. 2 at 45). When asked, "do you know how much?" Plaintiff replied, "wow, no, no." (*Id*.)

13

in her capacity as an employee of the Milton Police Department, attempted to enforce Delaware's criminal laws. There is no evidence that she did so in a manner evidencing wanton negligence or willful or malicious conduct.

Plaintiff's claims that Defendant's conduct resulted in false report, false arrest, illegal search and seizure, false testimony, false evidence, unlawful incarceration, and slander are not supported by the record. Moreover, the evidence of record does not support a finding that Defendant engaged in conduct outlined in § 4011(c) that would strip her of her immunity. She has absolute immunity from any tort liability arising out of her actions in effecting Plaintiff's arrest, including Plaintiff's claims under Delaware law of false arrest, malicious prosecution, defamation, and wrongful imprisonment. Therefore, the Court will grant Defendant's motion for summary judgment as to the State tort claims.

## CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment,[8] deny Plaintiff's cross-motion for summary judgment, and deny Defendant's motion to strike. (D.I 26, 29, 32).

An appropriate order will be entered.

---

[8]The Court does not address Defendant's motion for summary judgment for an excessive force claim. Plaintiff did not raise an excessive force claim in the Complaint. In addition, the Court does not address the issue of qualified immunity given that summary judgment is appropriate on other grounds.

14